Appeal No. 23-13434

# IN THE UNITED STATES COURT OF
# APPEALS FOR THE ELEVENTH CIRCUIT

**HAHNAH WILLIAMS,**
as administrator of the Estate of Matthew Zadok Williams,
and
**CHRIS ANN LEWIS,**
as mother and heir to the Estate of Matthew Zadok Williams,

**Plaintiffs/Appellants,**

**v.**

**DEKALB COUNTY, GEORGIA,**

**Defendant/Appellee.**

## BRIEF OF APPELLEE DEKALB COUNTY, GEORGIA

*On Appeal from the United States District Court*
*for the Northern District of Georgia, Atlanta Division,*
*Civil Action No. 1:23-cv-0738*

*Laura K. Johnson*
Deputy County Attorney
Georgia Bar No. 392090

*Nikisha L. McDonald*
Supervising Attorney
Georgia Bar No. 489573

*Rebecca J. Dobras*
Senior Assistant County Attorney
Georgia Bar No. 940524
Email: rjdobras@dekalbcountyga.gov

**DeKalb County Law Department**
1300 Commerce Dr., 5th Floor
Decatur, GA 30030
Telephone: (404) 371-3011
Fax: 404-371-3011

**CASE NO. 23-13434**
**Hahnah Williams, et. al. v. DeKalb County, Georgia**

**DEFENDANT/APPELLEE'S CERTIFICATE OF**
**INTERESTED PERSONS AND CORPORATE DISCLOSURE**
**STATEMENT**

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned hereby certifies that the following is a full and complete list of all parties and other persons, associations of persons, partnerships or corporations (including those related to a party as a subsidiary, conglomerate, affiliate or parent corporation) having either a financial interest in or other interest which could be substantially affected by the outcome of this particular case:

1. Batten, The Honorable Timothy C. – Judge, Northern District of Georgia

2. Davis, Mawuli M. – Counsel for Plaintiff

3. Davis Bozeman Johnson Law P.C. – law firm for Plaintiff

4. DeKalb County, Georgia – Defendant/Appellee

5. DeKalb County Board of Commissioners

6. DeKalb County Law Department

7. DeKalb County Police Department

8. Dobras, Rebecca J. – Counsel for Defendant/Appellee

9. Ernstes, Viviane H. – County Attorney, DeKalb County

10. Johnson, Laura K. – Counsel for Defendant/Appellee

C - 1

**CASE NO. 23-13434,**
**Hahnah Williams v. DeKalb County**

11. Lewis, Chris Ann – Plaintiff/Appellant

12. McDonald, Nikisha L. – Counsel for Defendant/Appellee

13. Moore, Sidney Leighton III – Counsel for Plaintiff/Appellant

14. The Moore Law Firm, P.C. – law firm for Plaintiff/Appellant

15. Spence, Harold W. – Counsel for Plaintiff

16. Williams, Hahnah – Plaintiff/Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellees respectfully submit that oral argument is not necessary in this case because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. Fed. R. App. Proc. 34 (a)(2)(C).

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement…………C-1

Statement Regarding Oral Argument……………………………………………....i

Table of Contents……..……………………………………………..................ii

Table of Citations……………………………………………………….......iv

Statement of the Issues……...…………………………………………….1

Statement of the Case……………………………………………………2

     I.     Summary of facts alleged in Appellants' amended complaint…3

          A. Facts related to the April 12, 2021 incident………………….3

          B. Appellants' claims against the County………………………5

    II.   Procedural History…………………………………………...6

    III.   Standard of Review……………………………………………7

Summary of the Argument……………………………………………8

Argument…………………………………………………………..11

     I.     The District Court applied the correct legal standards on the County's Motion to Dismiss Appellants' claims under the ADA and the RA…………………………………………………...11

    II.   The District Court correctly found that Appellants' amended complaint does not support a cognizable reasonable accommodation claim under the ADA or the RA (Count II) as a matter of law…………….…………………………………15

    III.   The District Court correctly applied the deliberate indifference standards to Appellants' claims…………………………….…..…………...26

IV.    The District Court correctly found that Appellants failed to state a reasonable accommodation claim against the County for the actions of Sgt. Perry (Count II)……………………………………………..29

     A.    Vicarious liability claims are not permitted under the ADA or the RA……………………………………………………………...29

     B.    Appellants have failed to allege the existence of a qualifying "official" for purposes of establishing deliberate indifference by the County……………………………………………………...30

     C.    Appellants failed to sufficiently allege that Sgt. Perry acted with deliberate indifference…………………………………………37

V.    The District Court correctly found that Appellants failed to sufficiently allege that the County acted with deliberate indifference related to its mental health policies and procedures (Count I)…………………...42

Conclusion .......................................................................................................... 54

Certificate of Compliance…………………………………………………..55

Certificate of Service………………………………………………..……...56

iii

# TABLE OF CITATIONS

**Cases**                                                                 **Page(s)**

*Am. Dental Ass'n v. Cigna Corp*.,
  605 F.3d 1283, 1290 (11th Cir. 2010) ................................................ 12
*Ashcroft v. Iqbal*,
  556 U.S. 662, 678-79, 682 (2009) ....................................... 8, 11-12, 14
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555 (2007) ................................................................... 11
*Bircoll v. Miami-Dade County*,
  480 F.3d 1072, 1082, 1085-87 (11th Cir. 2007)........................... Passim
*Castle v. Cobb Cnty., Georgia*,
   2022 WL 1569705, at *7 (N.D. Ga. May 18, 2022)…………………………….34
*Christmas v. Nabors*,
  76 F.4th 1320, 1328 (11th Cir. 2023) .................................................. 7
*City and County of San Fransisco, Calif. v. Sheehan*,
  575 U.S. 600, 610 (2015) ................................................................... 16
*De Boise v. Taser., Inc.*,
  760 F.3d 892, 894-95, 899 (8th Cir. 2014)........................................ 21
*Doe II v. Savannah-Chatham Cnty. Pub. Sch. Sys.*,
  2022 WL 3041276, at *4, Fn.4 (11th Cir. Aug. 2, 2022) ................... 36
*Est. of Osorio v. Miami Date County*,
  717 F. App'x 957, 957 (11th Cir. 2018)............................................ 16
*Est. of Osorio v. Miami-Dade Cnty.*,
  2017 WL 3721505, at * 3 (S.D. Fla. Feb. 10, 2017) ............................ 10, 17, 43
*Est. of Schultz v. Bd. of Regents of the Univ. Sys. of Georgia*,
  554 F.Supp.3d 1274, 1277-78, 1280-81 (N.D. Ga. 2021)..................... 10, 49, 51
*Farmer v. Brennan*,
  511 U.S. 825, 839-40, 842 (1994) ........................................... 27-28, 48
*Foulke v. Simmons*,
  2022 WL 22227778, at *1-2, 5, 7 (N.D. Fla., Oct. 27, 2022) ........................... 22
*Friedson v. Shoar*,
  2021 WL 5175656, at *4 (11th Cir. Nov. 8, 2021) .......................................... 27
*Frone v. JP Morgan Chase & Co.*,
  695 F. App'x 468, 472 (11th Cir. 2017)............................................. 11
*Gebser v. Lago Vista Indep. Sch. Distr.*,
  524 U.S. 274, 291 (1998) ................................................................... 35

*Giummo v. Olsen,*
2019 WL 13043039, at *8-9 (N.D. Ga. June 5, 2019) ..................................... 45

*Goodman v. Kimbrough,*
718 F.3d 1325, 1332 (11th Cir. 2013) ............................................................... 28

*Gray v. Cummings,*
917 F.3d, 1, 6, 18, 19 (1st Cir. 2019) .......................................................... 38, 50

*Griffin Indus., Inc. v. Irvin,*
496 F.3d 1189, 1205-06 (11th Cir. 2007) ......................................................... 11

*Haberle v. Troxell,*
885 F.3d 170, 181, 182 (3d Cir. 2018) ..................................................... 47, 50-51

*Harris-Billups v. Anderson,*
61 F.4th 1298, 1305 (11th Cir. 2023) ................................................................ 45

*Henry v. Okeechobee Cnty. Sheriff's Off.,*
2023 WL 239817, at *4 (11th Cir. Jan. 18, 2023) ............................................ 27

*Hoffer v. Sec'y, Fla. Dep't of Corr.,*
973 F.3d 1263, 1271 (11th Cir. 2020) ............................................................... 28

*Ingram v. Kubik,*
30 F.4th 1241, 1256-59 (11th Cir. 2022) ...................................................Passim

*J.S. III by and through J.S. Jr. v. Houston Cty. Bd. of Educ.,*
877 F.3d 979, 990-91 (11th Cir. 2017) ......................................................... 33-34

*J.V. v. Albuquerque Public Schools,*
813 F.3d 1289, 1297-98 (10th Cir. 2016) ................................................ 43, 50-51

*Jennings v. Stephens,*
574 U.S. 271, 276 (2015) .................................................................................. 15

*Liese v. Indian River County Hosp. Dist.,*
701 F.3d 334, 344, 347, 349-50 (11th Cir. 2012) .....................................Passim

*M.S. by and through Hall v. Susquehanna Township Sch. Dist.,*
969 F.3d 120, 126, 128 (3d Cir. 2020) .............................................................. 36

*McCullum v. Orlando Regional Healthcare Sys., Inc.,*
768 F.3d 1135, 1147, 1149 (11th Cir. 2014) .......................................... 27, 47-48

*McDowell v. Brown,*
392 F.3d 1283, 1292 (11th Cir. 2004) .......................................................... 51-52

*Nix v. Advanced Urology Inst. of Georgia, PC,*
2021 WL 3626763, at *2 (11th Cir. Aug. 17, 2021) ........................................ 27

*Olsen v. State,*
2024 WL 1066937, at *4 (Ga. App. Mar. 12, 2024) ........................................ 46

*Roberts v. City of Omaha,*
723 F. 3d 966, 975-76 (8th Cir. 2013) ............................................................... 51

*Roell v. Hamilton County, Ohio,*
870 F.3d 471, 476-478, 489 (6th Cir. 2017) ................................................. 21-22

v

*Rylee v. Chapman*,
   316 F. App'x 901, 906 (11th Cir. 2009) .............................................................. 13
*Salazar v. South San Antonio Indep. Sch. Dist.*,
   953 F.3d 273, 275, 279, 284 (5th Cir. 2017) ...................................................... 36
*Schwarz v. City of Treasure Island*,
   544 F.3d 1201, 1212 n.6 (11th Cir. 2008) .......................................................... 13
*Silberman v. Miami Dade Transit*,
   927 F.3d 1123, 1134, 1136 (11th Cir. 2019) ............................................ Passim
*State v. Larscheid*,
   367 Ga. App. 660, 667 (2023) ............................................................................ 46
*Vila v. Miami-Dade County*,
   65 F.Supp.3d 1371, 1375, 1379, 1384 (S.D. Fla. 2014) .............................. 21, 47
*Wade v. Georgia Correctional Health, LLC*,
   83 F.4th 1332 (11th Cir. 2023) .......................................................................... 28
*Wade v. McDade*,
   67 F.4th 1363 (11th Cir. 2023)……………………………………………….. 28
*Waller ex rel. Estate of Hunt v. Danville, VA*,
   556 F.3d 171, 172-173, 175-76 (4th Cir. 2009) ................................20-21, 24-26
*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
   792 F.3d 1313, 1328-29 (11th Cir. 2015).....................................................50-51
*Welch v. City of Hartselle, Alabama*,
   423 F.Supp.3d 1277, 1284 (N.D. Ala. 2019) .................................................... 43
*Wood v. President & Trustees of Spring Hill Coll. in City of Mobile*,
   978 F.2d 1214, 1219 (11th Cir. 1992) ...........................................................46-47

**Statutes**

29 U.S.C. § 794 ...................................................................................................... 2
29 U.S.C. § 794(a) ............................................................................................... 12
42 U.S.C. §1983 ...............................................................................28, 45, 50-51
42 U.S.C. § 12132 ............................................................................................ 2, 12

**Regulations**

28 C.F.R. § 35.130(b)(7) ..................................................................................... 13

**Rules**

Eleventh Circuit Rule 26.1-1 ................................................................. 2

Fed. R. App. P. 32(a)(5) ....................................................................... 55

Fed. R. App. P. 32(a)(6) ....................................................................... 55

Fed. R. App. P. 32(a)(7)(B)(i) .............................................................. 55

Fed. R. App. Proc. 34 (a)(2)(C)............................................................... i

Federal Rule of Civil Procedure 12(b)(6).............................................. 7

## STATEMENT OF THE ISSUES

I.      Whether the District Court correctly determined that Appellants do not have a cognizable reasonable accommodation claim under Title II of the American Disabilities Act ("ADA") or Section 504 of the Rehabilitation Act ("RA") as a matter of law.

II.     Whether the District Court correctly determined, as an alternative reason for dismissal, that Appellants failed to sufficiently allege a reasonable accommodation claim against the County for the actions of Sgt. Devon Perry.

III.    Whether the District Court correctly dismissed Appellants' ADA/RA claims related to the County's mental health policies and procedures on the ground that Appellants failed to sufficiently plead deliberate indifference.

## STATEMENT OF THE CASE

This case arises from the fatal shooting of Matthew Zadok Williams by a DeKalb County police officer, Sergeant Devon Perry, on April 12, 2021. Prior to his death, Mr. Williams, who was allegedly suffering from a mental health crisis, had charged at an officer with a knife, locked himself inside a townhouse – still in possession of the knife and out of the officers' sight – and refused to be compliant, thereby putting everybody's lives at risk.

Appellants, Hahnah Williams and Chris Ann Lewis, the administrator and heirs to Mr. Williams's estate, filed this claim for damages against DeKalb County, Georgia ("the County") pursuant to Title II of the American Disabilities Act, 42 U.S.C. § 12132, *et. seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), claiming that 1) the County allegedly failed to make reasonable modifications to its policies and procedures related to police encounters with individuals with mental illnesses; and 2) Sgt. Perry allegedly failed to accommodate Mr. Williams' mental disability by not de-escalating the situation, requesting assistance from persons trained to deal with individuals with mental illnesses, or requesting the SWAT team. (Doc. 10). The County filed a motion to dismiss, arguing that Appellants failed to state a claim under the ADA or the RA. (Doc. 11). The District Court granted the County's motion to dismiss in its entirety, finding that

2

Appellants failed to state a claim against the County on either of their two ADA/RA claims. (Doc. 16).

On that tragic day, the DeKalb County police officers encountered a man behaving erratically while armed with a deadly weapon (a large knife), who charged at them with the knife, and posed a threat to innocent lives. Given the precarious nature of the situation, the District Court correctly found that the exigent circumstances present rendered the requested accommodations unreasonable as a matter of law. (*Id.* – Pg. 17). The District Court also correctly found that Appellants failed to allege deliberate indifference sufficient to hold the County liable, either for the actions of Sgt. Perry or based on the County's mental health policies and procedures. (*Id.* – Pgs. 21, 24, 30). Appellants have not pointed to a single case in which similar claims have succeeded. As such, Appellants' ADA and RA claims against the County were appropriately dismissed for failure to state a claim.

## I.    Summary of facts alleged in Appellants' amended complaint

### A.    *Facts related to the April 12, 2021 incident*

On April 12, 2021, DeKalb County police officers responded to a call about a man wandering in the woods, who had pulled a knife on the complainant. (Doc. 10 – Pg. 16, ¶¶ 99-101).[1] When the officers arrived on scene, the man, Mr. Williams, was

---

[1] The paragraphs in Appellants' amended complaint are misnumbered. Several numbers are repeated. *See specifically* Doc. 10 – Pgs. 36-40.

sitting on the deck of a townhouse, holding a blue plumber's knife.  (*Id.* – Pg. 3, ¶¶ 8-9).  When told to leave the property, Mr. Williams ran towards an officer with that knife.  (*Id.* – Pg. 4, ¶¶ 11-12).  Subsequently, Mr. Williams reentered the house by breaking a window.  (*Id.* – ¶ 15).  Sgt. Perry arrived on scene and was given permission from his supervisor to force entry into the house; he approached the door with his gun drawn and announced himself.  (*Id.* – Pgs. 4-5, ¶¶ 15, 18, 20, 23, 25).  Sgt. Perry knew that Mr. Williams still had the knife in his possession at this point.  (*Id.* – Pg. 20, ¶ 134).

Once at the front of the house and after an officer knocked on the door, another officer kicked open the door; Mr. Williams immediately hid behind furniture and swiped the door closed.  (*Id.* – Pg. 5, ¶¶ 26-29).  The officers kicked the door back open, and Sgt. Perry fired a shot at Mr. Williams.  (*Id.* – ¶ 30).  Mr. Williams moved furniture to block the door and moved closer to the door.  (*Id.* – Pgs. 5-6, ¶¶ 31-32).  At some point during the encounter, Mr. Williams asked the officers to put their guns down so that he could talk to them.  (*Id.* – Pg. 6, ¶ 36).  But every time the door was kicked open, Mr. Williams would shut it again.  (*Id.* – Pgs. 6-7, ¶¶ 33-35, 41, 45).  On Mr. Williams's fifth attempt to close the door, Sgt. Perry fired three shots through the door as it was closing.  (*Id.* – Pg. 7 ¶¶ 41, 44).  Mr. Williams eventually succumbed to the injuries he sustained after being shot.  (*Id.* – Pgs. 7-8, ¶¶ 45, 53). Appellants alleged that, during this incident, Mr. Williams was experiencing a mental health

crisis.  (*Id.* – Pgs. 2-3, ¶¶ 5, 10).

### B.     *Appellants' claims against the County*

In Appellants' Count I (Failure to Make Reasonable Modifications to Policies, Practices, and Procedures), Appellants contend that the County acted with deliberate indifference for failing to make reasonable modifications to its policies and procedures related to encounters with individuals with mental illness, and that, as a result, Mr. Williams was exposed to a heightened risk of injury or death by reason of his disability.  (*Id.* – Pgs. 24-33).  Appellants contend that not all County officers are trained in dealing with individuals with mental illnesses; that, on three other occasions, officers mishandled encounters with people experiencing mental health crises; and that the County has inadequately funded and implemented crisis intervention training and other programs for recognizing and de-escalating situations with mentally ill people, despite the County's alleged knowledge that changes were needed.  (*Id.* – Pgs. 8-14, ¶¶ 54-81).

In Appellants' Count II (Failure to Provide Reasonable Accommodations), Appellants contend that the County is liable for Sgt. Perry's purported deliberate indifference in failing to accommodate Mr. Williams's disability during this encounter.  (*Id.* – Pgs. 33-40).  Appellants contend that Mr. Williams was not a "direct threat," despite still wielding a knife.  (*Id.* – Pg. 34, ¶ 223).  They contend that Sgt. Perry knew Mr. Williams was experiencing a mental health crisis and he (Sgt. Perry)

was insufficiently trained to deal with mental health crises, and because he failed to activate DeKalb County Police Department's ("DKPD") SWAT team, utilize crisis intervention techniques to de-escalate the situation, or call somebody else better trained in such techniques, Sgt. Perry was deliberately indifferent to Mr. Williams's rights for failing to accommodate his disability.  (*Id.* – Pgs. 34-37, ¶¶ 224-230, 232, 209-214).  Appellants only seek monetary relief.

## II.    Procedural History

The County filed a motion to dismiss Appellants' claims for failure to state a claim.  (Doc. 11).  The District Court granted the motion to dismiss in its entirety (Doc. 16 – Pg. 30), making the following conclusions: 1) Appellants "sufficiently pleaded that Williams was a qualified individual with a disability" (*id.* – Pg. 10); 2) "Eleventh Circuit precedent may allow an ADA or RA claim to proceed with respect to police encounters" (*id.* – Pg. 13); 3) as to Count II, "the modifications to which [Appellants] contend [Mr. Williams] [sic] was entitled were not reasonable as a matter of law under the circumstances (*id.* – Pg. 17); 4) additionally as to Count II, Appellants "have not alleged facts to demonstrate that Perry had complete discretion with respect whether to provide the accommodations or discretion at the relevant decision points in the administrative process (*id.* – Pg. 21); 5) "[t]he court finds no deliberate indifference based on Perry's actions (*id.* – Pg. 24); and 6) as to Count I,

6

Appellants "failed to plead facts to support an allegation of deliberate indifference by [the County]" (*id.* – Pg. 30).  Appellants timely filed their notice of appeal.  (Doc. 18).

### III.  Standard of Review

A district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is reviewed de novo.  *Christmas v. Nabors*, 76 F.4th 1320, 1328 (11th Cir. 2023).  "In conducting that *de novo* review, we apply the same standard as when a district court dismisses a complaint under Federal Rule of Civil Procedure 12(b)(6)." *Id.*

## SUMMARY OF THE ARGUMENT

The District Court's order should be affirmed for the following reasons:

I.  In analyzing the County's motion to dismiss, the District Court applied the correct legal standards, properly analyzed whether there was a legal basis for Appellants' ADA and RA claims, and appropriately gave Appellants' well-pled allegations a presumption of truth and resolved inferences in Appellants' favor, while not crediting Appellants' many conclusory statements and unwarranted inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 682 (2009). (Doc. 16, generally).

II.  The District Court correctly determined, based on the precarious exigent circumstances present during the incident in question – where the officers were faced with an unpredictable individual armed with a deadly weapon, who had already charged at the officers with that weapon and who refused to be compliant and stay in the officers' sight, and where there were serious public safety concerns – that the requested accommodations for Mr. Williams' mental illness –  including de-escalation, requesting assistance by people trained in mental illnesses, and activating the SWAT team – were unreasonable as a matter of law. *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1085-86 (11th Cir. 2007) (dismissing the ADA claim because the accommodations are "per se not reasonable").  (Doc. 16 – Pg. 17).

8

**III.**    The District Court correctly held that to state a claim for monetary damages under the ADA or the RA, Appellants needed to allege facts establishing deliberate indifference, which requires "a deliberate choice, more than gross negligence;" they must "show that DeKalb County knew of yet, failed to act on, the substantial likelihood of harm to a federally protected right." (Doc. 16 – Pg. 22). The District Court did not err in using a "more than gross negligence" standard. *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012).

**IV.**    The District Court also correctly found that Appellants failed to state a reasonable accommodation claim against the County for the actions of Sgt. Perry because 1) vicarious liability is not permitted under the ADA or the RA (*see Ingram v. Kubik*, 30 F.4th 1241, 1257, 1259 (11th Cir. 2022)); 2) Appellants failed to allege the existence of a qualifying official, as required to establish deliberate indifference (*see Liese,* 701 F. 3d at 350); and 3) Appellants failed to sufficiently allege that Sgt. Perry acted with deliberate indifference.  (Doc. 16 – Pgs. 17-24).

**V.**    As related to Appellants' Count I, in which it is alleged that the County failed to sufficiently train officers in handling mentally ill individuals, failed to sufficiently fund officer training and other programs for dealing with mentally ill individuals, and failed to implement certain policies and procedures related

to police encounters with mentally ill individuals, it is not clear that this Court even recognizes freestanding claims along these lines under the ADA or the RA. *See e.g.*, *Est. of Osorio v. Miami-Dade Cnty.*, No. 16-20200-CIV, 2017 WL 3721505, at *3 (S.D. Fla. Feb. 10, 2017), aff'd, 717 F. App'x 957 (11th Cir. 2018). But even if such claims exist, the District Court correctly concluded that Appellants failed to sufficiently allege that the County acted with deliberately indifference with respect to its mental health policies and procedures *as of 2021,* when this incident occurred. *See similarly*, *Est. of Schultz v. Bd. of Regents of the Univ. Sys. of Georgia,* 554 F.Supp.3d 1274, 1277-78, 1281. (N.D. Ga. 2021) (dismissing the failure-to-train claims under the ADA for failure to state a claim). (Doc. 16 – Pg. 30).

## ARGUMENT

**I.     The District Court applied the correct legal standards on the County's Motion to Dismiss Appellants' claims under the ADA and the RA.**

To avoid dismissal for failure to state a claim, the complaint "must contain sufficient factual matter, accepted as true, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must "raise a right to relief above the speculative level" and provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Appellants contend that the District Court "erroneously discredited" some of their "factually plausible allegations" and "improperly resolved factual issues in [the County's] favor." (Appellant Brief – Pgs. 19-21). While the Court is required to accept Appellants' well-pleaded facts as true and must resolve inferences in Appellants' favor, allegations that are not well-pled, such as conclusory statements, legal conclusions couched as factual allegations, and unwarranted deductions of fact, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555; *Frone v. JP Morgan Chase & Co.*, 695 F. App'x 468, 472 (11th Cir. 2017). Moreover, when general or conclusory allegations contradict other more specific facts, the specific facts should be accepted over the general or conclusory ones. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007); *Frone*, F. App'x at 472. Courts may also "infer from the factual allegations in the complaint

11

'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). Finally, when assessing whether a complaint states a plausible claim for relief, the reviewing court can draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

Appellants alleged two claims against the County under Title II of the ADA.[2] (Doc. 10 – Pgs. 24-39). Appellants incorporated the same arguments made for their ADA claims to also support their claims under § 504 of the RA.[3] (*Id.* – Pgs. 39-40). Claims under the ADA and the RA are governed by the same standards, and cases construing the ADA and the RA are relied upon interchangeably. *Ingram v. Kubik*,

---

[2] Title II of the ADA, 42 U.S.C.A. § 12132, states in part that:
> "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

[3] Section 504 of the RA, 29 U.S.C. § 794(a), states in part that:
> No otherwise qualified individual with a disability in the United States as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…

30 F.4th 1241, 1256 (11th Cir. 2022); *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).[4]

To state a prima facie case under the ADA or the RA, the plaintiff must allege "1) he is a qualified individual with a disability; 2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and 3) that the exclusion, denial of benefits, or discrimination was by reason of his disability." *Ingram*, 30 F.4th at 1256-57; *Silberman,* 927 F.3d at 1134.  Public entities are required to accommodate disabilities by making reasonable modifications to its policies, practices, or procedures, but only such modifications that are "reasonable" under the circumstances and that would not fundamentally alter the nature of the service or activity of the public entity or impose an undue burden.  *See* 28 C.F.R. § 35.130(b)(7); *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082 (2007).  An ADA/RA claim may proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations.  *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1212 n.6 (11th Cir. 2008); *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009).  And to state a claim for monetary damages under the ADA or the RA, the plaintiff must additionally allege deliberate indifference.  *Silberman,* 927 F.3d at1134.

---

[4] When a case analyzes either the ADA or the RA singularly, the undersigned treats said case as applicable to both the ADA and the RA claims.

If there is no legal basis for a claim, then it does not matter how well-pled the allegations are. *Iqbal,* 556 U.S. at 682 ("But even if the complaint's well-pleaded facts give rise to a plausible inference that respondent's arrest was the result of unconstitutional discrimination, that inference alone would not entitle respondent to relief"). Whether Appellants have stated a cognizable claim requires, not just a review their allegations, but also a legal analysis of the ADA and the RA. As will be developed in greater detail below, Appellants have failed to establish they have cognizable claims under the ADA or the RA.

On top of that, Appellants' amended complaint contains numerous legal conclusions that are not supported by specific facts, conclusory statements couched as factual allegations, and several contradictory statements. Appellants have asked this Court to make unwarranted and unreasonable deductions based on these conclusory and contradictory allegations. The District Court noted these shortcomings, both as to Appellants' lack of cognizable claims in general and as to their conclusory and contradictory allegations. As will be discussed below, the District Court properly analyzed the allegations in the amended complaint and correctly found that Appellants failed to state a claim under the ADA or the RA. (Doc. 16, generally).[5]

---

[5] Appellants also argued that the District Court should not have applied the particularity standard of Rule 9(b). (Appellant Brief – Pg. 23). While the District Court did include Rule 9(b) rules in its statement of legal standards, there is no language in the order indicating that the Court actually applied this particularity standard. (Doc. 16 – Pg. 7).

14

## II. The District Court correctly found that Appellants' amended complaint does not support a cognizable reasonable accommodation claim under the ADA or the RA (Count II) as a matter of law.

In its Motion to Dismiss, the County argued that this Court has not conclusively recognized a cognizable reasonable accommodation claim under the ADA or the RA where the allegations involve a police officer's use force on a possibly armed or dangerous individual who was allegedly experiencing a mental health crisis. (Doc. 11-1 – Pgs. 7-8). The District Court disagreed, holding that *Bircoll,* "from a plain reading, appears to allow, at a minimum, the possibility of an ADA or RA claim under the facts at issue," and permitted Appellants' reasonable accommodation claim to proceed. (Doc. 16 – Pg. 13). The County takes issue with the District Court's reasoning that such claims can generally proceed, but the Court did correctly determine that the accommodations at issue were not reasonable as a matter of law. (*Id.* – Pg. 17).[6]

---

[6] An appellee is permitted, without filing a cross-appeal, to "urge support of a decree on any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court, provided that attack does not "enlarge[e] his own rights" or lessen[] the rights of his adversary." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015). Because the District Court reasoned that a claim could exist generally, but nonetheless found that a claim did not exist here, the County is, thus, not seeking to enlarge its rights or lessen those of Appellants, but rather is simply asserting respectful disagreement with some of the Court's reasoning. *See id.* (because the appellee's theory "would neither have enlarged his rights nor diminished the State's rights under the District Court's judgment, he was required neither to take a cross-appeal nor to obtain a certificate of appealability").

In *Bircoll*, this Court contemplated that the ADA/RA might apply for certain police encounters: as related to the DUI arrest of a deaf individual, this Court stated, "in our view, the question is not so much one of the applicability of the ADA because Title II prohibits discrimination by a public entity by reason of Bircoll's disability," but rather, one of "reasonableness of the requested ADA modification." 480 F.3d at 1085. This Court ultimately concluded, however, that the plaintiff "failed to state an ADA claim regarding the field sobriety tests during his DUI arrest" (*id*. at 1086-87), which left open the question about viability of an ADA claim for police encounters with disabled individuals *in general*, let alone for claims specifically involving police encounters with armed or potentially dangerous individuals, where there may be a serious threat to public safety.

Neither the United States Supreme nor this Court have, at any point, conclusively recognized ADA or RA claims under such circumstances. *See City and County of San Fransisco, Calif. v. Sheehan*, 575 U.S. 600, 610 (2015) (declining to decide whether the ADA applies during a police encounter with and arrest of an armed woman suffering from a mental illness). After *Bircoll,* this Court stated – as related to a fatal shooting of a man with a history of mental illness who was acting strangely and potentially threatening – "this court has never addressed whether police officers can violate Title II of the ADA." *Est. of Osorio v. Miami Date County*, 717 F. App'x

957, 957 (11th Cir. 2018).[7]  As recently as 2022, this Court stated that it was declining to answer this question.  *Ingram*, 30 F.4th at 1257 (concerning a police encounter with an armed man suffering from post-traumatic stress disorder, this Court stated that whether the ADA applies to police encounters under these circumstances "*may conflict with precedent*," but then further stated "we need not address that argument") (emphasis added).  Requiring police officers facing possible deadly force to pause what they are doing and take possible life-saving time to consider whether that individual is entitled to an ADA accommodation before acting to protect themselves, their colleagues, and members of the public, is not what the ADA sought to remedy, and this Court should again decline to recognize such claims as generally cognizable.

Nonetheless, after finding that *Bircoll* does allow such claims to generally go forward, the District Court then concluded that Appellants could not prevail on their reasonable accommodation claim as a matter of law based on *Bircoll's* guidance, finding "the facts in this case, even more strongly than in *Bircoll*, demonstrate that the accommodations to which [Appellants] refer were not reasonable under the circumstances."  (Doc. 16 – Pg. 16).  The District Court is correct.

In *Bircoll*, this Court reasoned that certain exigent circumstances present during police encounters – such as the criminal activity at issue, the dangerousness of the

---

[7]  *See also, Est. of Osorio v. Miami-Dade Cnty.*, No. 16-20200-CIV, 2017 WL 3721505, at *1 (S.D. Fla. Feb. 10, 2017), <u>aff'd</u>.

criminal suspect and the situation at hand, the need to ensure the safety of the officers and the public, and to safely secure the scene – may make requested accommodations or modifications to police procedures "*per se not reasonable*."  480 F.3d at 1085-86 (emphasis added).  There, the plaintiff, who was deaf, requested an oral interpreter before taking field sobriety tests, but the responding officers at the scene denied this request.  *Id.* at 1086.  He filed suit alleging, in part, that the county violated the ADA and the RA when it failed to provide him with that interpreter.  This Court found that the plaintiff failed to state an ADA or an RA claim because the request was not reasonable as a matter of law, explaining that "waiting for an oral interpreter before taking a field sobriety test is not a reasonable modification of police procedures, given the exigent circumstances of a DUI stop on the side of a highway, the on-the-spot judgment required of police, and the serious public safety concerns in DUI criminal activity … where the danger to human life is high."  *Id.*

Here, Appellants' allegations establish that Mr. Williams had "pulled a knife" out on the original complainant; when the officers arrived, he had a "blue plumber's knife" on him, he began "following" an officer and "ran towards him with the knife," then "ran away," then reentered the home "by breaking a window;" upon the officers attempting to enter the home, he used "an ottoman to hide" and a "piece of furniture to block the door," moved "to a spot behind the wall next to the door, where he could more easily reach to shut the door," "closed the door each time that officers kicked it

open," and during this encounter, had the "knife in his possession." (Doc. 10 – Pgs. 3-7, 16, 20, ¶¶ 8, 12, 15, 28-35,41, 43, 99-101, 134).  As his "accommodation," Mr. Williams allegedly asked the officers to back off, lower their weapons, and talk peacefully through the door.  (*Id*. – Pg. 36, ¶ 232).  Appellants also argue that the officers should have employed crisis intervention methods of de-escalation and/or requested assistance from somebody with mental health training or DKPD's SWAT team because Mr. Williams was a "barricaded person."  (*Id.* – Pgs. 34-36, ¶¶ 220, 228, 212).

As the District Court correctly noted, the exigent circumstances here presented a far higher danger to human life than was present in *Bircoll,* which simply involved an on-the-street field sobriety test with a person who was not alleged to be dangerous or in the possession of deadly weapons. (Doc. 16 – Pgs. 13-17).  Appellants' allegations establish that the officers were facing an erratic man armed with a deadly weapon, who had already charged at the officers with that deadly weapon, who continued to be noncompliant with officer commands, and who continuously tried to hide behind closed doors and furniture so that the officers could not see what he was doing.  Requiring the officers to wait for a crisis intervention team or the SWAT team to arrive on scene or requiring them to put their weapons down despite Mr. Williams being armed with a deadly weapon himself could have resulted in serious or deadly consequences to innocent lives. Thus, Appellants' accommodations are far more

19

dangerous and impractical than the accommodations requested in *Bircoll*.  (*Id.* – Pgs. 16-17).

In considering similar police encounters with potentially dangerous individuals, other circuit Courts of Appeals, along with district courts in this circuit, have found similar accommodation/modification requests to police procedures to be unreasonable as a matter of law, based on the serious exigent circumstances present. Given the factual similarities, these cases are persuasive and should guide this Court's analysis. For example, in *Waller ex rel. Estate of Hunt v. Danville, VA*, 556 F.3d 171, 172-73 (4th Cir. 2009), the police responded to a dangerous hostage situation involving a man with severe mental illnesses; after a stand-off, the officers forced their way into the apartment, and upon seeing the man holding a knife, they fatally shot him.  The plaintiffs brought claims under the ADA, arguing that the officers should have accommodated the man's mental illness before breaching his apartment, including de-escalating the situation instead of yelling and banging on his door, calling mental health professionals, and/or administering medications to him.  *Id.* at 173, 175. The Fourth Circuit found that, given the totality of the circumstances and the exigencies presented to the officers – the unstable scene, not being able to see the man, the man's implications that he had weapons and his being in an agitated state, and the possibility that the scene could have quickly taken a "dark turn" – it was "unreasonable to expect the sorts of accommodations that plaintiff proposes." *Id.* at 175-76.

In *Roell v. Hamilton County, Ohio*, 870 F.3d 471, 476-77 (6th Cir. 2017), the police responded to a disturbance involving a half-naked man who was "muttering unintelligibly and standing next to a broken window holding a hose and the remnants of a hanging plant;" the man came towards the officers, swinging a hose "as if he was trying to hit somebody." After repeated commands to stop approaching, a struggle with the officers ensued, and the officers tased him multiple times, which ultimately lead to his death. *Id*. at 477-78. The plaintiff brought an ADA claim, arguing that the officers should have used verbal de-escalation techniques, gathered information from witnesses, and called EMS services before engaging with the man. *Id.* at 489. The Sixth Circuit found that given the "unquestionable" exigent circumstances facing the officers – the man's "continuing threat" to the officers and others, his approaching them with the hose, and officers' needing to make a "series of quick, on-the-spot judgments in a continuously evolving environment – the proposed accommodations were unreasonable "in light of the overriding safety concerns." *Id.*[8]

In *Vila v. Miami-Dade County*, 65 F.Supp.3d 1371, 1375 (S.D. Fla. 2014), the police responded to a call about a man with "psychological problems," who was

---

[8] *See also, De Boise v. Taser., Inc.*, 760 F.3d 892, 894-95, 899 (8th Cir. 2014) (related to a man suffering a psychotic episode, who was naked and yelling, screaming, breaking furniture, and acting threatening to the officers, the Eighth Circuit found no violation of the ADA, explaining that "[d]ue to the unexpected and rapidly evolving circumstances, the officers were not required to hesitate to consider other possible actions in the course of making such split-second decisions").

"behaving erratically;" the officers struck him with a baton, subdued him, and eventually arrested him. The plaintiff filed an ADA claim, arguing that the city "should have anticipated the need for and waited for a crisis intervention unit and officers specifically trained to deal with schizophrenic individuals." *Id.* at 1384. The district court found that, given the particular circumstances of the case, "[t]o force the police to delay a response…until a specialized unit was mobilized, or to require [them] to await specially trained backup while Mr. Vila became increasingly agitated and erratic, would have been both impractical and dangerous." *Id.* The court granted the city's motion to dismiss for failure to state an ADA claim, holding that the plaintiff could not establish the man was "unreasonably denied an accommodation in the course of his arrest." *Id.*

And finally, in *Foulke v. Simmons*, No. 3:20cv5506, 2022 WL 22227778, at *1-2 (N.D. Fla., Oct. 27, 2022), the police responded to a man suffering from a mental health crisis who was armed with a meat cleaver and a box cutter and was not complying with commands; when he raised the meat cleaver over his head, the officers shot him. The plaintiffs brought an ADA claim, arguing that the officers failed to accommodate his mental disability by establishing a "line of communication with [him] from a safe distance and by not tactically retreating once [he] came out of the door." *Id.* at *5. The district court held that the "proposed modifications completely ignore the exigent circumstances facing the deputies that day," which "far outweigh

22

those in *Bircoll*," and found them to be unreasonable as a matter of law. *Id.* at \*7.

Appellants attempt to argue that the facts here are different from *Bircoll,* such that Mr. Williams' desired accommodations/modifications were not unreasonable as a matter of law. They point to no legal authority to support their position, and their arguments are unpersuasive in establishing that the district court erred. First, Appellants argue that Mr. Williams's alleged crime concerns his disability, unlike the deaf plaintiff's DUI arrest in *Bircoll,* which somehow makes this case distinguishable. (Appellant Brief – Pg. 40). Notably, even though Mr. Williams was reported to be a "homeless person in an altered mental state" (*id.*), this is not a crime in and of itself, so Mr. Williams' alleged crime does not actually concern his disability thereby warranting a different outcome under *Bircoll*. Moreover*, Bircoll* makes clear that the exigent circumstances surrounding the encounter are what informs the reasonableness analysis, not whether the crime concerns the disability. 480 F.3d at 1086 ("the question is whether, *given criminal activity and safety concerns*, any modifications of police procedures is necessary"). Each of the cases cited above concerns individuals experiencing mental health crisis, and none of the decisions found this distinction to make any difference to their exigency analysis.

Second, Appellants argue that the passage of time is less critical here than in *Bircoll*, since evidence for a DUI case disappears over time, and that the officers would have to "linger on the side of the road at 3:00 a.m." (Appellant Brief – Pgs.

40-41). Appellants point to their allegations that Mr. Williams was not an "direct threat" or "imminent threat" and that the officers "had no reason to believe that anyone's life was in imminent danger (Appellant Brief – Pg. 41; Doc. 10 – Pgs.20-21, 24, ¶¶ 130, 134, 135, 161-62), but these are conclusory statements, not entitled to a presumption of truth. Removing these conclusory statements from consideration, Appellants' distinction does not make sense. An erratic non-compliant man armed with a deadly weapon presents a greater potential threat to officers than does "lingering" on the side of the road to do a standard field sobriety test with an unarmed individual. Ensuring officer safety from an armed individual, who already charged at the officers with that weapon, is a greater public safety concern than evidence for a DUI disappearing. In *Waller,* the Fourth Circuit considered a similar timeframe argument and ultimately rejected it, explaining that "'exigency' is not confined to split-second circumstances," but that the hostage situation was "unstable," and the standoff "could have taken a dark turn quickly and led to the loss of [ ] life." 556 F.3d at 175. Similarly here, even if not making "split-second decisions" (though arguably the officers were indeed making split-second decisions, given that the armed Mr. Williams continued to close the door so that the officers could not  see what he was doing), the officers were certainly operating "under the pressure of time from the start" and the circumstances could have quickly taken a "dark turn," given Mr. Williams' unpredictable behavior and being armed with a knife.

Third, Appellants argue that in *Bircoll*, the plaintiff may have had "ulterior motives" in requesting the accommodations, so as to give him time to sober up – where here Mr. Williams asked for "real accommodations, supported by respected law-enforcement agencies," including crisis intervention de-escalation methods and calling DKPD's SWAT team. (Appellant Brief – Pg. 42). As discussed above, other courts evaluating these same type of accommodation requests, "real" or not, in similar situations have found them to not be reasonable as a matter of law, given the exigent circumstances at issue, and so this distinction is not relevant either.

Finally, Appellants argue that the DKPD SWAT policy rebuts the argument that "exigent circumstances somehow compelled [the officers] to make an immediate forced entry." (Appellant Brief – Pg. 44). *Bircoll*, however, does not support an argument that the only thing under consideration is the "exigency" in needing to open the door. Rather, it is the totality of the *entire* incident that makes the accommodations unreasonable. *Bircoll,* 480 F.3d at 1085-86. ("[F]ield sobriety tests in DUI arrests involve exigencies that necessitate prompt action for the protection of the public that make the provision of an oral interpreter … per se not reasonable")*; see similarly, Waller,* 556 F.3d at 175 ("Reasonableness in law is generally assessed in light of the totality of the circumstances, and exigency is one circumstance that bears materially on the inquiry into reasonableness under the ADA"). As dictated by *Bircoll*, the *totality of the circumstances*, including the presence of very serious exigent

circumstances, as discussed above, render Mr. Williams' accommodations unreasonable as matter of law.

Thus, after eliminating Appellants' many conclusory statements related to this claim, the District Court did not err in finding that, based on the totality of the exigent circumstances faced by the officers, the accommodations sought by Mr. Williams were not reasonable as a matter of law. The district court properly dismissed Count II (Failure to Provide Reasonable Accommodations) on these grounds.  (Doc. 16 – Pg. 17 ).

### III.    The District Court correctly applied the deliberate indifference standards to Appellants' claims.

"In the ordinary course, proof of an [ADA] or [RA] violation entitles a plaintiff only to injunctive relief." *Silberman,* 927 F.3d at 1134.  To recover compensatory damages, "a plaintiff must clear an additional hurdle: he must prove that the entity he had sued engaged in intentional discrimination, which requires a showing of deliberate indifference." *Id.; Ingram*, 30 F.4th at 1257.  Deliberate indifference is an "exacting standard." *Silberman,* 927 F.3d at 1134.  It requires proof that the "defendant knew that harm to a federally protected right was substantially likely and …failed to act on that likelihood." *Id.*; *see also*, *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012).  Appellants only sought monetary damages from the County, and as such, are required to sufficiently allege deliberate indifference for both of their claims.

26

Appellants argue that the District Court applied the wrong standard for deliberate indifference for both of their claims. (Appellant Brief – Pg. 21). The District Court stated that Appellants "must show that DeKalb County knew of yet, failed to act on, the substantial likelihood of harm to a federally protected right;" and that "deliberate indifference requires a deliberate choice, more than gross negligence," citing to *Liese*, 701 F.3d at 344. (Doc. 16 – Pg. 22). Appellants believe that the District Court, in using *Liese*, improperly "increased [Appellants'] burden by applying a 'more than gross negligence' standard," a standard not dictated by *Farmer v. Brennan*, 511 U.S. 825 (1994). (Appellant Brief – Pg. 21). *Liese* does hold "deliberate indifference requires *more than gross negligence*." 701 F.3d at 344. As of the date of this brief, *Liese* is still good law, and this Court has continued to apply the more than gross negligence standard to ADA/RA claims in several cases after *Liese,* all of which are also still good law. *See e.g., McCullum v. Orlando Regional Healthcare Sys., Inc*., 768 F.3d 1135, 1147 (11th Cir. 2014); *Nix v. Advanced Urology Inst. of Georgia, PC,* No. 21-10106, 2021 WL 3626763, at *2 (11th Cir. Aug. 17, 2021); *Friedson v. Shoar,* No. 20-14803, 2021 WL 5175656, at *4 (11th Cir. Nov. 8, 2021); *Henry v. Okeechobee Cnty. Sheriff's Off.*, No. 21-12520, 2023 WL 239817, at *4 (11th Cir. Jan. 18, 2023). Additionally, this Court recently explained that "the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used

27

in the criminal law." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting, respectively, *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), and *Farmer,* 511 U.S. at 839–40). Thus, given this Court's *current* guidance on what deliberate indifference means, the District Court did not err in holding that deliberate indifference requires, at the very least, more than gross negligence.

As Appellants noted, this Court is currently considering whether – in the 42 U.S.C. § 1983 Eighth Amendment context – gross negligence is the correct standard for deliberate indifference or whether the standard should more appropriately be "more than mere negligence." *See Wade v. McDade*, 67 F.4th1363 (11th Cir. 2023) (determining that gross negligence is the correct standard), vacated by *Wade v. Georgia Correctional Health, LLC*, 83 F.4th 1332 (11th Cir. 2023) (petition for rehearing granted).[9] It is not clear that the outcome in *Wade* would affect this case, given that it concerns the Eighth Amendment, though, *Liese* is listed as one of the "gross negligence" cases in this Court's recitation of the various cases. *Id.* at 1371.

Here, however, it does not matter whether the standard for deliberate indifference requires more than gross negligence or something less than that. As will be further developed below, regardless of which standard is applied, the District Court

---

[9] In the rehearing, oral argument occurred on February 13, 2024. As of the date of this motion, this Court has not issued an order.

correctly found that Appellants failed to sufficiently allege that the County acted with deliberate indifference for either of their ADA/RA claims, and therefore, they have not stated a claim for compensatory damages under the ADA/RA against the County. (Doc. 16 – Pgs. 22-30).

### IV.   The District Court correctly found that Appellants failed to state a reasonable accommodation claim against the County for the actions of Sgt. Perry (Count II).

If this Court determines that an ADA/RA reasonable accommodations claim can generally exist as related to a police encounter with an armed and potentially dangerous individual, the District Court correctly found, as an alternative basis, that Appellants have nonetheless failed to state a reasonable accommodation claim against the County for the actions of Sgt. Perry, for three distinct reasons. (Doc. 16 – Pgs. 17-23).

*A. Vicarious liability claims are not permitted under the ADA or the RA.*

This Court has held that vicarious liability for the actions of employees is not an available claim against a government entity under the ADA. *Ingram,* 30 F.4th at 1257, 1259. Appellants alleged that Sgt. Perry 1) was aware Mr. Williams was experiencing a mental health crisis; 2) knew he did not have adequate training to deal with the mental health crisis; 3) should have called for assistance but did not; and 4) heard Mr. Williams make a request for an accommodation but ignored it. (Doc. 10 – Pgs. 34-38, ¶¶ 225-229, 232, 209, 218-223). These allegations are unrelated to the

County's knowledge or failure to act, as is required for deliberate indifference, but solely focuses on what Sgt. Perry did or did not do, what he knew or did not know. This is nothing more than a vicarious liability claim. Under *Ingram,* Appellants cannot recover based on a theory of vicarious liability for the alleged actions/inactions of Sgt. Perry.

### B. Appellants have failed to allege the existence of a qualifying "official" for purposes of establishing deliberate indifference by the County.

Appellants contend that they are not asserting a vicarious liability claim (despite the claim sounding in vicarious liability), but instead claim that the County is directly liable, through the actions of Sgt. Perry, for failing to accommodate Mr. Williams. (Appellant Brief – Pg. 24). To establish deliberate indifference on these grounds, Appellants must sufficiently allege the existence of an "*official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the entity's behalf and who has *actual knowledge* of discrimination in the entity's programs and fails adequately to respond." *Ingram,* 30 F.4th at 1259 (emphasis supplied). Appellants contend that Sgt. Perry is such a person. (Appellant Brief – Pg. 25). The District Court found that Appellants failed to allege that Sgt. Perry is a qualifying official for purposes of deliberate indifference. (Doc. 16 – Pg. 21). The District Court is correct.

An official is someone who "enjoys substantial supervisory authority within an organization's chain of command, so that when dealing with the complainant, the

official had *complete discretion* at a 'key decision point' in the administrative process." *Liese,* 701 F. 3d at 350. The "official" must be "high enough up the chain of command that his [or her] acts constitute an official decision by the [entity] to *not remedy the misconduct*," that through their actions, "they speak for [the entity] as a whole." *Silberman*, 927 F.3d at 1134 (emphasis added). In *Liese,* this Court explained that doctors were officials for purposes of this analysis because they had "complete discretion" to decide "whether or not*"* to provide the requested accommodation, and yet failed to do so; while, on the other hand, nurses were not officials because the doctors have the ability to "overrule" a nurse's decision to *not* provide the accommodation. *Liese,* 701 F. 3d at 350.

Appellants' allegations demonstrate that Sgt. Perry, even as the commanding officer on the scene, did not exercise *complet*e discretion to decide whether or not to provide the requested accommodations: "Perry called his superior officer, Lieutenant James, who authorized Perry to force entry to the townhome," (Doc. 10 – Pg. 4, ¶ 18); "Perry contacted Lieutenant James and requested permission to make a forcible entry into Zadok's home," (*id.* – Pg. 20, ¶ 133); "Perry specifically obtained authorization for his actions from his official supervisor, Lt. James" (*id.* – Pg. 34, ¶ 221). Much like the nurses in *Liese*, whose decision to *not* provide an accommodation could have been overruled by the doctors, these allegations indicate that Sgt. Perry's desire to enter the home (and, thus, not take other actions, such as provide the requested

accommodations) could have been "stopped" or "overruled" by Lt. James, as Sgt. Perry's supervisor.[10]    Thus, Sgt. Perry, like the nurses, did not have complete discretion to decide the course of action for dealing with Mr. Williams, as indicated by his actions in seeking approval from Lt. James.

Appellants argue that the District Court improperly drew "negative inferences" from the above allegations.  (Appellant Brief – Pg. 26).  The only way to interpret the words "permission" and "authorized" as alleged is that Sgt. Perry asked whether he could enter the house, and Lt. James, as his supervisor, could permit entry or could forbid entry.  One simply cannot reasonably infer "complete discretion" based on these allegations.  Appellants instead want this Court to infer that *perhaps* Sgt. Perry was "not required" to call Lt. James or that *perhaps* he called out of "uncertainty" or "for cover." (Appellant Brief – Pgs. 26-27).  Nothing in Appellants' amended complaint allows for the Court to make these leaps, which are nothing more than pure speculation and unwarranted deductions of fact.

Appellants also argue that Sgt. Perry is the official because, even if he could not enter the house without permission, they alleged he did have "authority and discretion to do these things" (i.e. authority to provide the accommodations). (Appellant Brief – Pg. 27).  Taking as true that Sgt. Perry did have authority to *provide*

_____

[10] Appellants have not made any contentions in the district court or in this appeal that Lt. James is the qualifying official for deliberate indifference purposes.

the requested accommodations, that does not make him the official for purposes of deliberate indifference.  This exact argument was expressly rejected by this Court in *Liese*:  The "official" is not any "person who has knowledge of a violation and the authority to correct it," because that "essentially eviscerates the requirement that there be a decision by an officer."  701 F.3d at 349.  *Liese* makes clear that the relevant question is not who has the authority to *grant* the accommodation, but who makes the official decision *not* to remedy the misconduct.  *Id.* at 350.

Similarly, in *J.S. III by and through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 990 (11th Cir. 2017), which Appellants relied upon, this Court found that the teachers, who did have some supervisory authority, were appropriate officials because they "had authority to take corrective action *to stop* [the aide] from removing [the child] from the classroom" (emphasis added).  On the flip side, this Court determined that the coaches were not qualifying officials because there was insufficient evidence that they "had authority to take corrective action *to stop* [the aide]." *Id.* at 991 (emphasis added).  Again, Lt. James, as the commanding officer, or any other higher-ranking officer, had the authority to stop Sgt. Perry from entering the house (and thus to require other actions), demonstrating Sgt. Perry's lack of complete discretion as to whether or not to provide accommodations.  As such, *J.S.* does not support Appellants' position.

33

Interestingly, Appellants contend that "had one of Perry's subordinate officers … decided to de-escalate rather than force entry, their decision would have been subject to immediate and controlling review by their commanding officer, Perry. But if Perry had decided to de-escalate, the other officers present would have had to obey him." (Appellant Brief – Pg. 29). Flipping this argument around, if *Lt. James* had denied Sgt. Perry's request to enter the house, and "decided to de-escalate," *Sgt. Perry* would have had to obey him. Why Appellants think this rule applies to Perry's subordinates, but not to Sgt. Perry – a subordinate to Lt. James – and *his* commanding officer, Lt. James, does not make sense.

On top of that, as the District Court correctly noted, even if Sgt. Perry had the authority to *call* and *request* the mobile crisis unit or the SWAT team, there are no allegations establishing that Sgt. Perry had any supervisory authority whatsoever over these units, such that he could demand their arrival at the townhouse to provide the requested accommodations. (Doc. 16 – Pg. 21). Appellants alleged that when SWAT was called, the SWAT Captain said he was an hour away. (Doc. 10 – Pg. 8, ¶ 50). There are no allegations indicating that Sgt. Perry could have changed that window or demanded a different outcome. There are also no allegations that Sgt. Perry had any authority to change DKPD policy. *See similarly*, *Castle v. Cobb Cnty., Georgia*, No. 1:19-CV-01406-JPB, 2022 WL 1569705, at *7 (N.D. Ga. May 18, 2022), aff'd, No. 22-12156, 2023 WL 3772501 (11th Cir. June 2, 2023) (explaining that while

"[p]laintiff's allegations also show that Sergeant Doe held *some* degree of supervisory authority" such as "managing and supervising her subordinate corrections officers by virtue of her rank as sergeant," Plaintiff does not allege that Sergeant Doe had authority to correct the discriminatory practices of the CCSO"). Thus, the District Court correctly held that "[b]ased on the totality of the facts pleaded in the complaint," Appellants "have not alleged facts to demonstrate that Perry had complete discretion with respect to whether to provide the accommodations or discretion at the relevant decision points in the administrative process." (Doc. 16 – Pg. 21).

For a separate reason, Sgt. Perry cannot be the official because he is the alleged "wrongdoer"– he is the person who allegedly failed to provide the requested accommodations.[11] The United States Supreme Court has held that when liability rests on "actual notice principles …the knowledge of the wrongdoer himself is not pertinent to the analysis." *Gebser v. Lago Vista Indep. Sch. Distr.*, 524 U.S. 274, 291 (1998). *Gebser* is a Title IX case, but this Court repeatedly relies on *Gebser's* guidance for analyzing ADA/RA claims. *See Liese*, 701 F.3d at 347; *Ingram,* 30 F.4th at 1257-59 (both doing an extensive analysis of *Gebser*). The "official" rule discussed above was taken directly from *Gebser*. *Liese*, 701 F.3d at 349; *Ingram*, 30 F.4th at 1259. Using *Gebser*, this Court previously rejected a contention that the purported wrongdoer himself could be the qualifying "official," even if he otherwise fits the bill.

---

[11] The District Court declined to address this argument. (Doc. 16 – Pg. 21, fn. 3).

*See Doe II v. Savannah-Chatham Cnty. Pub. Sch. Sys.*, No. 21-13023, 2022 WL 3041276, at \*4, fn.4 (11th Cir. Aug. 2, 2022)[12] (rejecting the argument that "[b]ecause Johnson [as the assistant principal] had actual notice of his *own* misconduct and failed to remedy the situation … the District acted with deliberate indifference.").   In analyzing this rule in the Title IX context, the Fifth Circuit similarly found that liability cannot be imposed on the school when the only employee with actual knowledge of the wrongdoing was the perpetrator himself, explaining that the "wrongdoer" – even if he otherwise qualifies as the official – is not likely to remedy his own misconduct or report his own bad behavior, which effectively eliminates the government's ability to learn of the discrimination.  *Salazar v. South San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 275, 279, 284 (5th Cir. 2017) ("Imposing liability on the district when it had no knowledge of the abuse would be counter to the purposes of Title IX").  The Third Circuit similarly found that the wrongdoer cannot be the qualifying official, explaining that "imposing liability when only the perpetrator … knows of his wrongdoing, would be more akin to … to *respondeat superior*, which the Supreme Court expressly rejected." *M.S. by and through Hall v. Susquehanna Township Sch. Dist.*, 969 F.3d 120, 126, 128 (3d Cir. 2020).  Because deliberate indifference in the ADA/RA context similarly depends on a knowledge requirement, and because *respondeat superior* is also not available under the ADA/RA, this

---

[12] *Doe II* also involves a Title IX claim.

36

wrongdoer rule should similarly apply in the ADA/RA context.  And so, as the alleged "wrongdoer," Sgt. Perry cannot be the qualifying official for purposes of establishing deliberate indifference.

Thus, because Appellants failed to sufficiently plead the existence of an official, as required for deliberate indifference, dismissal for failure to state a claim was appropriate.  *See Silberman,* 927 F.3d at 1136 (granting the motion to dismiss for failure to state a claim under the RA, explaining that "[although the *Liese* inquiry is necessarily fact-based, that doesn't mean that the mere incantation of 'official'-ness entitles Silberman to discovery").

C. *Appellants failed to sufficiently allege that Sgt. Perry acted with deliberate indifference.*

Even if Sgt. Perry is the "official" for purposes of holding the County directly liable, the District Court correctly found that Appellants failed to allege that Sgt. Perry's "actions with respect to Williams constitute deliberate indifference."  (Doc. 16 – Pg. 24).  It is Appellants' burden to point to specific non-conclusory allegations that show deliberate indifference.  They have failed to do so.  They have also failed to point to a single case in support of their position – where an officer, faced with an armed and potentially dangerous individual, was deliberately indifferent for not seeking the assistance of individuals trained in de-escalation and/or dealing with mental health crises.

First, as discussed above, the accommodations Appellants believe should have been provided to Mr. Williams were not reasonable under the precarious circumstances as alleged herein. (S*ee supra*). Certainly, if the requested accommodations are unreasonable, one cannot be deliberately indifferent for failing to provide them. Second, Appellants allege that Sgt. Perry was not trained in crisis intervention methods. (Doc. 10 – Pgs. 27-28, ¶¶ 177-178, 182-183). Appellants cannot then (nor have they) establish that Sgt. Perry knew of the existence of such methods and made "a deliberate choice" to not employ them. *See Liese*, 701 F.3d at 344. In a similar case related to a police encounter with a non-compliant woman experiencing a manic episode, the First Circuit found that the officer did not act deliberately indifferent under the ADA for failing to employ certain police protocols for dealing with individuals with mental illnesses when there was no evidence that he knew of the existence of such standards. *Gray v. Cummings*, 917 F.3d, 1, 6, 18 (1st Cir. 2019).

Third, numerous allegations made by Appellants demonstrate the *opposite* of deliberate indifference by Sgt. Perry : 1) Sgt. Perry told investigators that he "requested dispatch to call the MCU[13] on his way to the incident scene, but the MCU never responded," (Doc. 10 – Pgs. 18, 30 ¶¶ 119, 193); 2) his reasoning to enter the house was to "check on [Mr. Williams's] status because he had been shot at by

---

[13] MCU is the mobile crisis unit.

[Officer] Lamy" (*id.* – Pg. 21, ¶ 136); 3) he requested permission to enter the house from his supervisor before doing so and followed his commands (*id.* – Pgs. 4, 20, 34, ¶¶ 18, 133, 221); 4) he tried to engage with Mr. Williams through the closed door (*id.* – Pg. 21, ¶¶ 141-142; and 5) he was found to have not violated any County policies in not calling SWAT or in his use of force against Mr. Williams (*id.* – Pgs. 24, 28, 32, ¶¶ 158, 184-185, 208). The District Court agreed, finding that many of Appellants' allegations "cut against" a finding of deliberate indifference, including Sgt. Perry's call to mobile crisis unit, his reason for entering the house, that he sought authorization from his supervisor prior to entering the house, and that he was found not to have violated any DKPD policy. (Doc. 16 - Pg. 23).

Appellants quibble with the District Court's findings by attempting to spin *their own words.* They argue that the Court discredited their allegations and improperly "disbelieved" Appellants' factual allegations. (Appellant Brief – Pgs. 31-34). This is incorrect. Appellants' allegations relating to Sgt. Perry's alleged deliberate indifference are riddled with conclusory statements, legal conclusions couched as facts, and contradictory statements, particularly as related to Mr. Williams not being a "direct" or "imminent threat" (Doc. 10 – Pgs. 20-21, 24 ¶¶ 130-132, 135, 160-161), given that he was still armed with a deadly weapon and refusing to remain in the officers' sight. (*See supra*).

39

Appellants argue that they "did not allege that Sgt. Perry actually requested that dispatch call the MCU." (Appellant Brief – Pg. 32). Instead, they contend they alleged Sgt. Perry "claimed" to have asked dispatch to send the MCU," but that he actually did not call them. (*Id.*). The allegations in the amended complaint specifically read: "Sergeant Perry *told* investigators…that he requested dispatch to call the MCU," and "Perry *told* the DKPD that he attempted to call the MCU." (Doc. 10 – Pgs.18, 30, ¶¶ 119, 193). The allegations do not say Sgt. Perry "claimed" to have said this, and they are not qualified in any way. Rather, they are stated as fact, and so it was not error to take them at their face value. Appellants, however, contend that the District Court erred when it credited "Perry's statements over [Appellant's] allegations," that dismissals cannot be based on a "judge's disbelief of a complaint's factual allegations." (Appellant Brief – Pg. 32). This argument is nonsensical as these are *Appellant's* allegations. On the other hand, to infer what Appellants intended to plead would be an unwarranted deduction.

Additionally, Appellants' allegations are in conflict with one another. Despite their later contention that Sgt. Perry did not "request assistance from anyone with adequate de-escalation training" (Doc. 10 - Pg. 35, ¶ 229), they previously alleged, in nearly back-to-back paragraphs: Sgt. Perry "told" investigators that he requested dispatch to call the mobile crisis unit, and then "on information and belief, the [mobile crisis unit] never responded because it was understaffed on account of Defendant's

40

deliberate underfunding." (Doc. 10 – Pg. 30, ¶ 195). The only way to read these two allegations is that someone, specifically Sgt. Perry, called the mobile crisis unit. Given these conflicts, it is not apparent that the District Court improperly "disbelieved" their allegations, but instead credited the more specific allegations over the less specific conflicting allegations. In any event, even if Sgt. Perry did not call anyone else to assist, beyond the call he made to his own supervisor, while he making split-second decisions in the heat of the moment with an unpredictable armed individual, this does not demonstrate deliberate indifference.

Appellants also argue they did not allege that Sgt. Perry's purpose in entering the house was to check whether Mr. Williams had been injured. Again, they contend they "claimed" that was his purpose, pointing to their allegation that the reason was "pretextual." (Appellant Brief – Pg. 33). This is a conclusory statement not entitled to a presumption of truth. If Sgt. Perry had some other nefarious motive in entering the house, Appellants do not allege anything along those lines. Inferring an evil motive for the purposes of deliberate indifferent when there are no allegations giving rise to such an inference is not appropriate.

Finally, Appellants argue that the District Court improperly relied on the IRB's "approval of Perry's conduct," that the court "implicitly held" that Sgt. Perry's conduct "must have been lawful because he squeaked through the IRB on a 4-3-2 split decision." (Appellant Brief – Pgs. 34-35). Despite their numerous conclusions that

41

the barricaded person policy was violated by Sgt. Perry not calling SWAT (Appellant

Brief – Pgs. 34-35, 44-45), Appellants specifically alleged that the IRB "found that

Perry *did not violate* any of [DKPD's] policies and that his use of force was

reasonable" – that is *their allegation*.  (Doc. 10 – Pg. 24, ¶ 158).  Whether the vote

was unanimous or a 4-3-2 split, the finding was ultimately <u>no violation</u>, even if the

IRB did require Sgt. Perry to complete some additional training in incident command.

(*Id.*).  To infer the opposite based on Appellants' conclusory statement that the IRB

"ratified" Sgt. Perry's alleged "wrongful failure to provide accommodations," though

there are no facts to support that statement, or based on their argument that Sgt. Perry

simply "squeaked" by, are not reasonable inferences. Thus, Appellants have failed to

sufficiently allege deliberate indifference by Sgt. Perry.

In sum, for the above reasons, Appellants have failed to state a reasonable

accommodation claim against the County (Count II) for the actions of Sgt. Perry.

Count II was correctly dismissed for each of these additional reasons.

### V.     The District Court correctly found that Appellants failed to sufficiently allege that the County acted with deliberate indifference related to its mental health policies and procedures (Count I).

In Count I, Appellants allege that the County failed to sufficiently train officers

in handling mentally ill individuals, failed to sufficiently fund officer training and

other programs for dealing with mentally ill individuals, and failed to implement

certain policies and procedures related to police encounters with mentally ill

individuals. (Doc. 10 – Pgs. 24-33).   For this claim, the District Court concluded that Appellants "failed to plead facts to support an allegation of deliberate indifference." (Doc. 16 – Pg. 30).  The District Court is correct.

Appellants have not pointed to a single case, either from this Circuit or anywhere else, in which a free-standing claim against a government for a lack of mental health training, funding, and/or staffing as related to police encounters, was successful under the ADA or RA. On the other hand, courts in this circuit examining similar free-standing failure-to-train claims have found such claims may *not* exist under the ADA/RA.  *See e.g.*, *Est. of Osorio v. Miami-Dade Cnty.*, No. 16-20200-CIV, 2017 WL 3721505, at *3 (S.D. Fla. Feb. 10, 2017), aff'd, 717 F. App'x 957 (11th Cir. 2018) ("To the extent that the Estate asserts that the County is directly liable under Title II for its failure to train the officers, it is unclear whether a failure to train claim exists under the statute.  It seems reasonably clear, however, that in the absence of proof of an underlying violation of ADA, a failure-to-train claim would also fail"); *Welch v. City of Hartselle, Alabama*, 423 F.Supp.3d 1277, 1284 (N.D. Ala. 2019) (holding that "[i]n the absence of the recognition of a failure-to-train claim or theory under Title II by the Eleventh Circuit, the Court declines to permit plaintiff to proceed on such a theory here"); *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1297 (10th Cir. 2016) ("This circuit has not recognized a failure-to train claim of discrimination under the ADA, but we have not foreclosed the possibility"). Without

43

explanation or authority as to why this Court should recognize Appellants' free-standing failure-to-train and budgetary/staffing claims as valid under the ADA/RA, this Court should decline to do so here.

In any event, Appellants have nonetheless failed to adequately allege that the County was deliberately indifferent with respect to its mental health training, funding, staffing, and other mental health policies and procedures *as of 2021,* when this incident occurred.  Appellants incorrectly state that the standard for this claim is "reasonableness" – that the County failed to "take reasonable measures to abate the problem." (Appellant Brief – Pgs. 47, 50).  The obligation to provide "reasonable modifications" is only part of the equation.  To establish *deliberate indifference* for the purpose of seeking monetary damages under the ADA/RA, again, Appellants must also overcome the "exacting standard" that the County had actual knowledge of discrimination in its programs, such that harm to a federally protected rights was substantially likely and *failed to act* on that likelihood.  *Silberman,* 927 F.3d at 1134.

Appellants argue that they have pointed to "direct evidence" that the county had "actual knowledge" of the risk of discrimination and the need for improvement. (Appellant Brief – Pg. 46).  They point to their allegations concerning three high-profile police encounters involving individuals with mental illnesses from 2015 and 2017 (Katie McCrary, Quintas Harris, and Anthony Hill), statements made by public officials in 2015 and 2017 following these incidents about the need for mental health

improvements, and a 2018 grand jury investigation about the need additional funding to train police officers in mental health. (Appellant Brief – Pg. 46). Appellants conclude that, despite this "knowledge," the County "failed" to provide officers with training and resources and "refused" and "failed to make reasonable modifications." (Doc. 10 – Pgs. 25-27, ¶¶ 169-170, 176). These conclusory statements are contradicted by Appellants' own factual allegations, which do not establish that the County *failed to act.*

Appellants have not pleaded (nor could they plead truthfully) that any court has found the County liable for disability discrimination or any other misconduct in connection with any of alleged three incidents. This Court recently affirmed qualified immunity for the officer sued in connection with the Quintas Harris shooting, ruling that the officer did not violate the Fourth Amendment when she fired the fatal shot. *See Harris-Billups v. Anderson*, 61 F.4th 1298, 1305 (11th Cir. 2023) ("Officer Anderson… was up against a man who … bore the means, and the ability, and the demonstrated intent to shoot her, a man who was acting erratically and violently, and who had shown no sign of giving up. …Mr. Harris posed a real and immediate threat of grave harm"). The Northern District of Georgia granted summary judgment to the County in Anthony Hill's family's 42 U.S.C. § 1983 civil case, specifically rejecting a failure-to-train claim against the County. *See Giummo v. Olsen*, No. 1:15-cv-3928, 2019 WL 13043039, *8-9 (N.D. Ga. June 5, 2019). And the criminal indictment of

45

Officer Larscheid in the Katie McCrary matter was thrown out, and the conviction of Officer Olsen in the Hill matter was overturned. *State v. Larscheid*, 367 Ga. App. 660, 667 (2023); *Olsen v. State*, 2024 WL 1066937, at *4 (Ga. App. Mar. 12, 2024). Thus, these incidents are insufficient to impute any kind of knowledge on the County relating to the purported mental health deficiencies claimed by Appellants.

Moreover, following these three incidents in 2015 and 2017, the statements made by public officials about a need for mental health improvements, and the grand jury investigation in 2018, Appellants' allegations establish that the County did indeed make changes to its handling of mentally ill individuals. As of 2017, the *majority* of officers had been trained in crisis intervention, and in 2018-2019, *additional* money was added to the budget to *continue* giving crisis training to officers (because training was already occurring before this money was provided in 2018 and 2019, given that 50% of officers had already been trained by 2017). (*Id.* – Pgs. 10-11, ¶¶ 62, 64-65). Appellants also acknowledge the County funded and staffed a mobile crisis unit at least to some extent between 2017-2021. (*Id.* – Pgs. 12-14, ¶¶ 74, 77-78, 80). Thus, in this relevant timeframe, police training was occurring, funding was increased, a mobile crisis unit was up and running, just as the public officials and the grand jury recommended. "As a general matter, good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages under [the RA]." *Wood v. President & Trustees of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219

(11th Cir. 1992); s*ee similarly, Vila v. Miami-Dade County*, 65 F.Supp.3d 1371, 1379 (S.D. Fla. 2014) (dismissing the ADA clam, finding, in part, that the plaintiff failed to establish a "need to train or supervise in the area of mentally ill inmates," but instead "seem to indicate the *opposite* of a deliberate choice of inaction…that the County policymakers recognized a deficiency and *attempted to rectify it*") (emphasis added).

Additionally, given these changes, the state of affairs in the County related to mental health policies was *different* in 2021 than it was in 2015. Appellants' allegations concerning what was going on in 2015-2018, then, are not direct evidence of County's knowledge of continued discrimination and its purported inadequacies *as of 2021* (some three to six years later). Appellants, therefore, have not pointed to direct evidence establishing the County had actual knowledge of discrimination in its existing programs, policies, or procedures *as of 2021*, when this incident occurred. *See e.g., Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (affirming dismissal of the ADA claim against the town, finding that the plaintiff "fails to allege that the Borough was aware that its *existing policies* made it substantially likely that disabled individuals would be denied their federally protected rights under the ADA" (emphasis added).

However, "[w]here the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.,* 768 F.3d 1135, 1147 (11th Cir.

47

2014) (quoting *Farmer v. Brennan,* 511 U.S. 825, 842 (1994)).  Appellants have failed to sufficiently allege that, *as of 2021,* the County's response has been 'so obviously inadequate' to the risk of harm so as to demonstrate deliberate indifference (Doc. 16 – Pg. 29), particularly given that the County had been implementing measures related to mental health encounters for several years.  *See similarly, McCullum,* 768 F.3d at 1149 (the plaintiffs did not present sufficient evidence establishing that the hospital staff "knew it was substantially likely that the accommodations they were providing were ineffective").

Appellants argue they alleged that not "all" officers had been trained in crisis intervention by 2021, that "insufficient" funding was allocated to training, that "senior supervisory officers such as Sgt. Perry were left untrained in mental-health response techniques," that the mobile crisis unit was not funded and staffed to "sufficiently" to respond to mental health crises on "all shifts and in all precincts," and that the County "flatly refused any increase" in funding.  (Appellant Brief – Pgs. 47-48, 50-51).  These allegations are likewise insufficient to state a claim for deliberate indifference.

First, Appellants have not pointed to any authority establishing that the County is required to train all, or even a certain number of, officers in crisis intervention, that the funding it did allocate to training and the mobile crisis unit is "obviously inadequate," that it is required to even have a mobile crisis unit at all, let alone staff with a certain number people or to operate it on a 24/7 basis, or that it is required to

48

have specific policies related to dealing with mental health crises in order to be ADA compliant.

Authority from this circuit and other circuits have found similar allegations regarding a lack of officer training or mental health policies insufficient to establish deliberate indifference under the ADA or the RA. In *Est. of Schultz v. Bd. of Regents of the Univ. Sys. of Georgia,* 554 F.Supp.3d 1274, 1277-78. (N.D. Ga. 2021), for example, which involved a fatal shooting of a person suffering from a mental health crisis, the allegation was that Georgia Tech was deliberately indifferent for failing to properly train their officers in crisis intervention methods. The plaintiff alleged only eighteen of the eighty-nine police officers had received crisis intervention training. *Id.* at *1278. In dismissing the ADA claim, the district court held that the plaintiff's allegations that the police officers were inadequately trained "fall far short of the kind of obvious need for training that would support a finding of deliberate indifference." *Id.* at 1281. Here, even without an allegation as to how many officers were or were not trained in crisis intervention by 2021, even in 2017, a greater percentage of officers had been trained in crisis intervention than alleged in *Schultz*: by 2017, at least 50% of DeKalb County police officers had been trained, and, in 2018 and in 2019, the training budget was increased to train even *more* officers. (Doc. 10 – Pgs. 10-11, ¶¶ 62, 64-65).

49

Moreover, in *Gray v. Cummings*, the First Circuit dismissed a direct liability claim against the town, where the claim was that the officers fell below national police standards in failing to wait for backup or to call an ambulance before approaching the person experiencing a manic episode. 917 F.3d at 19. The Court found that the plaintiff failed to show an obvious risk of harm, and that "[a]t most, she had only put forth evidence that the Town's policies failed to comply with national standards. But such a failure – without more – does not render the risk of harm so great and obvious." *Id; see similarly, Haberle,* 885 F.3d at 182 ("[F]alling below national standards does not, in and of itself, make the risk of an ADA violation … 'so patently obvious that a municipality could be held liable'"). Similarly, in *J.V.*, 813 F.3d at 1298, the Tenth Circuit granted summary judgment on the ADA claim, finding that "Appellants' bare allegation of failure to train officers is not nearly enough to show deliberate indifference …. They have not shown APS was on notice of the need for more or better training."

While this Court has not evaluated failure-to-train or budgetary/staffing claims in the ADA/RA context, it has evaluated similar claims related to police encounters with mentally ill individuals in the § 1983 governmental liability (or "*Monell*") context.[14] In *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328-29

---

[14] Appellants seem to imply that using "*Monell*" cases as persuasive authority is inappropriate in the ADA/RA context. (Appellant Brief – Pg. 45). Appellants failed

(11th Cir. 2015), this Court explained that a failure-to-train claim typically requires a "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, but "[i]n limited circumstances," "evidence of previous incidents is not required … if the need to train and supervise in a particular area is 'so obvious' that liability attaches for a single incident." *Id.* This Court affirmed dismissal of the failure-to-train claims, finding that the complaint "does not allege that the need for specialized training … on the use of force when dealing with mentally ill citizens is 'so obvious' the failure to provide such training amounts to deliberate indifference."[15]

Nor have Appellants alleged that the County's budget or staffing decisions were so obviously inadequate as to be substantially likely to result in the violation of Mr. Williams's rights. In *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004),

---

to explain why this line of cases should not be used to at least guide similar theories under the ADA or what they believe the appropriate analysis should be instead. Rather, courts in this circuit and other circuits have used *Monell* and its progeny to evaluate similar training, policy, and funding claims under the ADA/RA. *See e.g., Schultz*, 554 F.Supp.3d at 1280 (citing t *Weiland* and other *Monell* cases); *J.V.*, 813 F.3d at 1298 ("We have relied on § 1983 decisions in addressing failure-to-train ADA claims"); *Haberle*, 885 F.3d at 182 (citing *Monell* cases); *Roberts v. City of Omaha*, 723 F. 3d 966, 975-976 (8th Cir. 2013) (discussing § 1983 failure-to-train claims in the context of a similar ADA claim).

[15] The three incidents mentioned in the amended complaint, as alleged, are also not similar enough to establish a widespread pattern of disability discrimination such to put the County on notice of the need for changes to their mental health policies and procedures. *See similarly, Weiland*, 792 F.3d at 1328-29 (the complaint "does not allege a pattern of *similar constitutional violations* by *untrained employees*") (emphasis added).

this Court explained that the County's liability "cannot be dependent on the scant likelihood that its budget decisions would trickle down the administrative facets and deprive a person of his constitutional rights." "[L]iability must be premised on a finding that "*this*" budget decision was "highly likely to inflict the *particular* injury" [Mr. Williams] suffered. *Id. (emphasis supplied).*

Again, Appellants' allegations establish that funding for officer training was *increased* in 2018-2019, and even if this *additional* funding was ceased in 2020 (Doc. 10 – Pgs. 10-11, ¶¶ 64-65), there are no allegations funding for training ceased altogether. Nor have Appellants alleged facts establishing what renders this amount inadequate. They simply want this Court to take its word. Appellants also argue that the County "allocated no funding at all" to the mobile crisis unit, "until years later, when it could spend federal money," which they claim allows for the inference that "it was unwilling to spend County funds." (Appellant Brief – Pg. 49). That argument is not supported by the allegations, nor is it a reasonable inference based on the facts as alleged. Appellants do not allege that *no* funding was given to the mobile crisis unit, but instead, they allege that it was "underfunded," that the County did not "add" any funding. (Doc. 10 – Pg. 13, ¶ 77). Finally, Appellants have not connected how the *specific* budget and staffing decisions they complain about specifically caused Mr. Williams harm.

And finally, as to Appellants' contention that the County left senior supervisory officers, like Sgt. Perry, untrained, Appellants have not pointed to a specific high-ranking official who made decisions as to which officers received crisis training or when, including the decision to train or not to Sgt. Perry; nor have Appellants pointed to any official who knew that Sgt. Perry specifically was inappropriately trained or that he allegedly mishandled previous mental health encounters, and made deliberate choices not to address these issues. As discussed above, to find deliberate indifference on this ground, Appellants would have had to allege the existence of an official who made specific decisions related to training, and/or knew that Sgt. Perry, specifically, was insufficiently trained.

Thus, Appellants have failed to sufficiently allege that the County was on notice of any discrimination in its policies, practices, or procedures *as of 2021,* such that it was obvious that more training, more resources, or different policies were necessary beyond what had already been implemented. Without sufficient allegations that the County acted with deliberate indifference, the District Court did not err in dismissing this claim for failure to state a claim.

## CONCLUSION

For the above reasons, the County respectfully request that this Court affirm the judgment of the District Court and dismiss Appellants' claims against it in their entirety.

Respectfully submitted this 22nd day of April, 2024,

Laura K. Johnson
Deputy County Attorney
Ga. Bar. No. 392090

Nikisha L. McDonald
Supervising Attorney
Georgia Bar No. 489573

*/s/ Rebecca J. Dobras*
Senior Assistant County Attorney
Ga. Bar No. 940524

*Counsel for Appellee DeKalb County*

54

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P.

   32(a)(7)(B) because:

   - this brief contains **12,971** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(i).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

   and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   - this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point and Times New Roman font.

   This the 22nd day of April, 2024,

   /s/ Rebecca J. Dobras
   Senior Assistant County Attorney
   Ga. Bar No. 940524

   *Counsel for Appellee DeKalb County*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day, April 22, 2024, electronically filed the foregoing **BRIEF OF APPELLEE** with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in this case who are registered CM/ECF users will be served electronically by the appellate CM/ECF system. Counsel also has been served a copy of the foregoing brief via electronic mail to the following counsels of record:

Leighton Moore
THE MOORE LAW FIRM, PC
1819 Peachtree Street NE Suite 403
Atlanta, GA 30309
leighton@moorefirmpc.com
Attorney for Appellant

This the 22nd day of April, 2024,

*/s/ Rebecca J. Dobras*
Senior Assistant County Attorney
Ga. Bar No. 940524

*Counsel for Appellee DeKalb County*

56